

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

December 20, 1973

The Honorable Jesse James
State Treasurer
Treasury Department
Austin, Texas 78711

Opinion No. H-186

Re: Are dividends held by
a bank trust department
and credited to a parti-
cular trust account or
trust accounts subject to
being reported as an
"inactive account" or a
"dormant account, "
pursuant to the provisions
of Article 3272b, V. T. C. S ,
and related questions.

Dear Mr. James:

You have asked for the opinion of this office on a number of questions
concerning the applicability of Articles 3272a and 3272b, V. T. C. S. , to
certain dividends, cash and stock, received by the trust department of a
bank from the sale of stock sold before the "ex-dividend date. " You advise us:

"[A] bank trust department of a national banking
association with its principal place of business in a Texas
city administers many trusts, estates and other fiduciary
accounts. Investments for such trust accounts frequently
include corporate stocks. . . . [S]tock purchased or
acquired for a trust account is usually registered in the
name of a trust department nominee for the Bank, but a
record is carefully maintained to show the interest of each
trust account in shares held in the name of a trust depart-
ment nominee. . . .

"Occasionally corporate shares sold before the ex-
dividend date are not transferred before the dividend record
date. Consequently, the Bank will occasionally receive
dividends in respect of trust shares that have been sold. The

p. 865

> records of the Bank are kept in a fashion that enables it to determine how such a dividend should be allocated to a particular trust account or apportioned among two or more trust accounts, if the sale involves shares from more than one account.

> "Although it is infrequent, the Bank will sometimes receive certificates for shares representing a stock dividend or a stock split in respect of shares that were sold before the ex-dividend date. . . .

> "Under the procedure followed by the Bank, dividends in respect of shares that have been disposed of are credited to the selling trust accounts, and when a proper claim is presented for the amount of the dividend, the claim will be paid (or discharged by transfer and delivery in the case of dividend shares) and charged to the appropriate trust account or accounts to which the credit was made.

> "In instances where a meritorious claim is filed, the Bank pays the amount of cash dividend or transfers the dividend shares to the account of the purchaser and charges the disbursement or transfer to the trust account from which the original shares were sold.

> "In some instances no claim is ever made by or on behalf of the purchaser of the shares, with the result that the dividend remains credited to the selling trust account without diminution on account of disbursement or transfer in response to the meritorious claim timely filed by or on behalf of the purchaser."

The "ex-dividend date" is best understood in reference to another important date in the dividend process. The record date is the date determined by the board of directors as the date to determine which shareholders will receive a dividend based on stock ownership up to and including that date. The ex-dividend date is set by the stock exchange or by the National Association of Securities Dealers (for over-the counter-stocks) and generally precedes the record date by four business days. Trades made on the ex-dividend date normally settle one day after the record date which means that the shares of a purchaser cannot be transferred into his name and on the books of the company

in time to receive the dividend. Therefore, stock sold on or after the ex-dividend date is "without dividend," and the seller would be entitled to receive the dividend. The price of stock selling on its ex-dividend date is normally reduced by the amount of the dividend. Zarb and Kerekes, The Stock Market Handbook, at p. 708-709 (1970); The New York Stock Exchange, "The Language of Investing," at p. 12-13 (1973).

In the situation you describe the rightful owner of the dividends which were sent to the bank would be the purchaser of the stock, and the fact that the dividends were sent to the bank would be the result of a mistake on the part of the issuing corporation.

Your first two questions are as follows:

"1. Under the facts here presented, are the dividends held by a bank trust department and credited to a particular trust account or trust accounts subject to or not subject to being reported as an 'inactive account' or a 'dormant account,' pursuant to the provisions of Article 3272b, Revised Civil Statutes of Texas?

"2. Under the facts here presented, are the dividends held by a bank trust department and credited to a particular trust account or trust accounts subject to or not subject to escheat under Articles 3272a and/or 3272b of the Revised Civil Statutes of Texas?"

This office answered similar questions for your department in Attorney General Opinion M-563 (1970), the only differences being that (1) in your present opinion request you advise that the bank is depositing these dividends to its beneficiary's account, whereas in connection with Opinion M-563 you advised that "the bank's trust department is unable to allocate such dividends to any particular trust account," and (2) the prior request did not make it clear that the stocks involved were sold before the ex-dividend date and, thus, it could be assumed that the bank or its beneficiary had some character of title to the dividends.

Under the facts you present the bank receives stock and cash dividends which rightfully belong to the person to whom the stock which formed the basis of the dividends had been sold. Apparently the rightful owner can be located by reference to the corporation's stock transfer records; however, instead of returning the dividends to the corporation for distribution to the rightful owner, the bank distributes them to the trust accounts which previously owned the stock.

Although we make no judgment on the potential criminal liability caused by the set of facts described to us, we feel we must call your attention to Articles 1410, 1413, Vernon's Texas Penal Code; § 31.03, Vernon's Texas Penal Code, (eff. Jan. 1, 1974); and see Byrd v. State, 235 S. W. 891 (Tex. Crim. 1921); Hedge v. State, 229 S. W. 862 (Tex. Crim. 1921); Campos v. State, 207 S. W. 931 (Tex. Crim. 1918); Fulcher v. State, 25 S. W. 625 (Tex. Crim. 1894); accord, Williams v. State, 268 S. W. 2d 670 (Tex. Crim. 1954); see, Worthington v. State, 109 S. W. 187 (Tex. Crim. 1908); Reg v. Middleton, L. R. 2 Cr. Cas. Res. 38 (1873).

If the bank's policy of distributing dividends to its trust accounts when neither the bank nor the trust beneficiaries have any claim of equitable ownership constitutes a penal offense, the dividends will be subject to handling under Texas Code of Criminal Procedure, Article 47.01, et seq. If, on the other hand, there is no action or omission which constitutes a criminal offense, the question would be controlled by Vernon's Texas Civil Statutes, Articles 3272a and 3272b. Article 3272a, § 1, provides in part:

> "Section 1 . . . . Every person who holds personal property which becomes subject to escheat under Article 3272 after the effective date of this Act, shall, within sixty (60) days thereafter, file a report thereof with the State Treasurer, as specified in Section 2 of this Article; provided that after one report has been made under this Article by any person, subsequent reports by such person may be made on an annual basis on or before May 1st of each year.

"(a) The term 'person' as used in this Article menas any individual, corporation, business association, partnership, governmental or political subdivision or officer, public authority, estate, trust, trustee, officer of a court, liquidator, two (2) or more persons having a joint or common interest, or any other legal, commercial, governmental or political entity, except banks, savings and loan associations, banking organizations or institutions.

"(b) The term 'personal property' includes, but is not limited to, . . . dividends. . . ."

Article 3272b provides in part:

"Section 1. Every depository holding dormant deposits or inactive accounts of depositors or owners whose existence and whereabouts are unknown to the depository, shall preserve intact the deposits and accounts so long as they remain in a dormant or inactive status.

"a. The term 'depository' as used in this Article means any bank, savings and loan association, banking institution or organization which receives and holds for others deposits of money or its equivalent in banking practice or other personal property in this State, or in other States for residents last known to have resided in this State.

"b. The terms 'dormant deposits' and 'inactive accounts' mean those demand, savings, or other deposits of money or its equivalent in banking practice, including but not limited to sums due on certified checks, dividends, notes, accrued interest, or other evidences of indebtedness, held by a depository for repayment to the depositor or creditor, or his order, which on or after the effective

date of this Article have continuously remained
inactive for a period of more than one (1) year with-
out credit or debit whatsoever through the act of the
depositor, either in person or through an authorized
agent other than the depository itself. 'Dormant
deposits' and 'inactive accounts' lose their status
as such when a deposit is made by the depositor, or
a check is drawn or withdrawal is made therefrom
by such depositor, either in person or through an
authorized agent other than the depository itself.

"Sec. 2. It shall be unlawful for any depository
to transfer, convert or reduce any dormant deposit or
inactive account to the profits or assets of the deposi-
tory, either through book transfer, assessments,
service charges or any other procedure so long as the
deposit or account remains in a dormant or inactive
status. This shall not apply to the charges hereinafter
specifically authorized for efforts to locate the deposi-
tors. "

Assuming the absence of a penal offense, we believe Article 3272a
would apply when the dividends are distributed to the trusts or to the bene-
ficiaries. Attorney General Opinion M-563 does not require a different
result. Unlike the situation you describe for us here, that opinion assumed
the maintenance of the dividends by the bank in a separate fund since it was
unable to distribute them among the trusts. Here, the dividends are held
by either the trusts or the beneficiaries. We do not believe that the fact that
a nominee of a bank acts as trustee would cause these dividends to fall under
the bank exclusion of Article 3272a.

Accordingly, in the context of the narrow fact situation you present,
we answer your first question in the negative and your second question in
the affirmative.

Your third and fourth questions are:

"3.  If the answer to number 1 above should be in the
negative, under the facts here presented will the cause
of action for recovery of the dividends on behalf of the
purchaser of the stock accrue on the giving of notice to
the broker to or through whom the sale is made, as
stated in the letter set out in the preceding paragraph?

"4.  Under the facts here presented, do the provisions
of Attorney General's Opinion No. M-563 (1970) with
respect to the bar of limitations in an escheat action
apply to a bank trust department's trust accounts whose
records specifically identify the owner of the dividends,
shares of other securities credited to a particular trust
account? "

You have advised us that the bank proposes to give notice to brokers
in an attempt to begin the running of the statute of limitation under Vernon's
Texas Civil Statutes, Article 342-701, on any action to recover the dividends.
Article 342-701 provides in part that, "[t]he cause of action on any such depos-
itory contract, other than a time deposit, shall not accrue until the bank has
denied liability and given the depositor notice thereof. "

The notice the bank proposes to give is contained in a letter which will
be sent periodically to each broker with whom the trust department nominee
has done business during the period.  It will read:

"(Name of Nominee) has carefully reviewed its records
respecting stock, bonds and other securities sold to or
through your firm during _____ month period ending
on the last day of _____, 197__.  As shown
by our records, all meritorious claims that have been
filed with us on account of dividends, whether in cash,
shares or other securities received by us after the making
of the sale, have been paid and discharged.  Accordingly,
this company hereby denies liability for any claim that
you may now or hereafter have on behalf of yourself or on
behalf of any other person, for dividends, whether in cash,

> shares or other securities, received by us after the making of any sale to or through you during the period above specified."

We do not believe this letter constitutes notice under Article 342-701. It is not directed to the equitable owner of the dividends, who in the context of Attorney General Opinion M-563 (1970) is the depositor, and it does not identify the property on which liability is being denied. However, we do not believe Article 342-701 is applicable to the situation you describe. The dividends have been allocated to the trusts and beneficiaries and, unlike the situation considered in Attorney General Opinion M-563, are not held by the bank for possible repayment to the equitable owner. Therefore, your third and fourth questions are answered in the negative.

## SUMMARY

Dividends on stock sold before the ex-dividend date which a bank trust department distributes to the trust which sold the stock may be subject to escheat under Vernon's Texas Civil Statutes, Article 3272a. Also, a distribution of dividends to someone other than their rightful owner, depending on all the relevant facts and circumstances, could be in violation of the Penal Code.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee